**COMMERCIAL NAT. BANK OF CEDAR-TOWN, GA. v. CHAPMAN et al.**

No. 14313.

United States Court of Appeals
Fifth Circuit.

Aug. 18, 1953.

James A. Branch, Thomas B. Branch, Jr., Atlanta, Ga., Henry A. Stewart, Sr., Cedartown, Ga., for appellant.

James Maddox, Rome, Ga., W. Colquitt Carter, Atlanta, Ga., for appellees.

Before HOLMES, STRUM, and RIVES, Circuit Judges.

STRUM, Circuit Judge.

The sole question here is whether or not, under the laws of Georgia, the transactions hereinafter mentioned constitute a valid pledge of three life insurance policies, creating rights in the pledgee superior to those of the named beneficiaries.

The policies were issued on the life of V. S. Chapman, Jr. On August 16, 1949, the account of V. S. Chapman & Company in the appellant bank was overdrawn. On that day, the bank loaned the Chapman Company $1,000.74 by honoring its outstanding checks in that amount, and Chapman, the insured, "deposited" the policies with the bank as collateral security for said loan. About a week later, August 22, 1949, Chapman procured from the insurance company a loan of $1,400 on said policies. The latter sum was deposited to the credit of Chapman & Company in the appellant bank, thus discharging the loan of $1,000.74.

The bank claims, however, that Chapman continued to leave the policies deposited with and pledged to appellant bank "as collateral and security for his general line of credit." There was never any written assignment of the policies, nor any written evidence of the pledge.

Thereafter, beginning with a note dated February 24, 1950, Chapman from time to time incurred additional indebtedness to the bank, aggregating, with interest, $6,596.78. Each of the notes evidencing these additional loans pledged property or income specifically named therein, but none of these mentioned the insurance policies. The bank, however, claims that although there was no written assignment of the policies there was a valid oral pledge thereof, accompanied by delivery, to secure Chapman's general line of credit, and that in addition to the collateral described in the notes, the insurance policies are also security for the payment of those notes. The policies remained in the actual physical custody of the bank.

Chapman died on December 1, 1950, owing the bank $6,141.47 of the indebtedness last above mentioned. The named beneficiaries and the bank each claimed the proceeds of the policies. The district court held that there was no valid pledge of the policies, and awarded recovery to the beneficiaries.

The Supreme Court of Georgia, which we follow in determining this controversy, has thus determined the common

law of Georgia with reference to the pledge of incorporeal property: "At common law, therefore, incorporeal things, though they might be sold or mortgaged, could not be pawned. Story on Bailment, sec. 280. Hence the necessity of the special provision of the (Georgia) Code for the pledging of notes and evidences of debt. Code, 2110." First Nat'l Bank v. Nelson & Co., 38 Ga. 391, text 402.

Prior to 1887, the Georgia Code (1868), § 2110, read:

"A pledge, or pawn, is property deposited with another as security for the payment of a debt. Delivery of the property is essential to this bailment, but promissory notes and evidences of debt may be delivered in pledge. The delivery of title deeds creates no pledge."

That language clearly did not authorize the pledge of an insurance policy by mere delivery or deposit thereof. While the statute remained in that form, the Supreme Court of Georgia held that the attempted pledge of warehouse receipts covering cotton, the cotton remaining in the actual custody of the warehouseman, conferred upon the pledgee no right or title which would enable the pledgee to maintain an action in trover against a *bona fide* purchaser of the cotton. See National Exchange Bank v. Graniteville Mfg. Co., 79 Ga. 22, 3 S.E. 411; Planters' Rice Mill Co. v. Merchants' Nat. Bank, 78 Ga. '574.

Apparently to overcome these decisions, the statute was amended in 1887, Acts of 1887, page 36, by inserting after the words "evidences of debt," the words "warehouse receipts, elevator receipts, bills of lading, and other commercial paper symbolic of property". Under the present statute all these, in addition to corporeal property, promissory notes and evidences of debt, may be delivered in pledge. Georgia Code, Ann. § 12–601. But the statute has not been amended to cover insurance policies, although the Supreme Court of Georgia held many years ago that at common law incorporeal property could not be pledged.

As the Georgia Supreme Court has held that incorporeal property could not, at common law, be made the subject of a valid pledge, and as an insurance policy is not within the scope of the Georgia statute authorizing the symbolic pledge of designated classes of incorporeal property and evidences of debt, we hold that the insurance policies in question could not be pledged merely by delivery. The district court was correct in holding that the attempted pledge was ineffectual, and that the bank acquired no right thereunder. We are concerned here only with an attempted oral pledge, not with a duly executed assignment of the policies.

Affirmed.